UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
:
ROY DAY, :
:
:
                           Plaintiff, :
:
       - against - :
:
:
MTA NEW YORK CITY TRANSIT :
AUTHORITY, et al., :
:
                        Defendants. :
:
------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/31/2019

17-CV-7270 (VSB)

**OPINION & ORDER**

Appearances:

Roy Day
New York, NY
*Pro se Plaintiff*

Byron Zinon Zinonos
New York City Transit Authority Law Department
Brooklyn, NY
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

     Pro se Plaintiff Roy Day brings this action against the New York City Transit Authority (the "Transit Authority"), Ruby Robinson, Dr. Cecil Akiwumi, Robert Hartley, Michelle Rivera-Vargas, and Jonathan Siegman (the "Individual Defendants" and, together with the Transit Authority, the "Defendants"), asserting claims arising under the Rehabilitation Act of 1983 (the "Rehabilitation Act"), 29 U.S.C. §§ 701, et seq., 42 U.S.C. § 1983 ("§ 1983"), the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290, et seq., and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101, et seq. Before me is Defendants' motion to dismiss Plaintiff's amended complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6) for failure to state a claim. For the reasons stated herein, Defendants' motion is granted in part and denied in part.

I. **Background**[1]

Plaintiff's allegations arise from his application to be appointed by the Transit Authority to the position of Train Operator. (*See* Am. Compl. ¶ 3.)[2] In 2009, a Notice of Examination announced an open competitive examination for the Train Operator position (styled in the Amended Complaint as "Exam #8098"). (*Id.* ¶¶ 3–4; *see also* Defs.' Mem. 1.)[3] Plaintiff took and passed the exam and was identified as "#9510" on the list for the position. (Am. Compl. ¶ 4.) In approximately April 2012, Plaintiff received a kidney transplant. (*Id.* ¶ 5.)

In or around February 2013, Plaintiff was convicted of a drug-related crime (the "2013 Conviction"). (*Id.* ¶ 7.) As part of the 2013 Conviction, Plaintiff was directed to attend a six-month inpatient drug treatment program, followed by a six-month outpatient drug treatment program. (*Id.* ¶ 8.) Plaintiff successfully completed all of his court-ordered drug treatment in or around November 2015. (*Id.* ¶ 10.) Since completing the treatment, Plaintiff has not used drugs. (*Id.* ¶ 11.)

In or around August 2016, Plaintiff received a letter from the Transit Authority inviting

---

[1] The facts set forth herein are taken from the allegations contained in the amended complaint, (Doc. 17), and documents referenced therein, which I may properly consider on a motion to dismiss under Rule 12(b)(6). *See, e.g.*, *Faber v. Metro. Life Ins. Co.*, No. 08 Civ. 10588(HB), 2009 WL 3415369, at *1 n.1 (S.D.N.Y. Oct. 23, 2009) ("In considering a motion to dismiss, the Court may consider documents attached as an exhibit to the complaint or incorporated into the complaint by reference, [and] documents that are integral to the plaintiff's claims, even if not explicitly incorporated by reference." (internal quotation marks omitted)), *aff'd*, 648 F.3d 98 (2d Cir. 2011). I assume Plaintiff's allegations contained in the Amended Complaint to be true for purposes of this motion. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). However, my reference to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] "Am. Compl." refers to Plaintiff's Amended Employment Discrimination Complaint ("Amended Complaint"), filed on February 16, 2018. (Doc. 17.)

[3] "Defs.' Mem." refers to the Memorandum of Law in Support of Defendants' Motion to Dismiss, filed on August 22, 2018. (Doc. 36.)

2

him to begin the pre-employment process for the Train Operator position.[4] (*Id.* ¶ 12.) The letter stated that Plaintiff would receive a drug test during the visit and, if he passed, that he "may be extended a conditional offer of employment and be invited to return for a medical examination." (*Id.*) On September 9, 2016, Plaintiff reported to the Transit Authority facility as directed and submitted several documents to a Transit Authority employee, including a job application that included questions about his criminal record. (*Id.* ¶ 13.) At that time, Plaintiff disclosed his prior drug conviction. (*Id.*) The application did not ask if Plaintiff used controlled substances. (*Id.*) Plaintiff was also administered a urinalysis for drugs, (*id.* ¶ 15), which he passed, (*id.* ¶ 17).

In approximately October 2016, Plaintiff sent a letter inquiring about the status of the hiring process, and on November 29, 2016, the Transit Authority instructed him to again report to their facility. (*Id.* ¶¶ 18–19.) On December 9, 2016, Plaintiff reported to the facility and completed a process identical to the one he completed on September 9—he submitted the same paperwork, attended an identical information session, and took another drug test. (*Id.* ¶ 20.) Plaintiff was again told that he would advance to the next part of the hiring process if he passed the drug test. (*Id.*) Defendant Siegman, the head of Employee Operations for the Transit Authority, informed Plaintiff that he would attempt to get Plaintiff into a training session on December 26, 2016. (*Id.* ¶ 21.)

On January 24, 2017, the Transit Authority sent Plaintiff a third pre-employment letter, directing him to attend a third pre-employment session on February 3, 2017. (*Id.* ¶ 25.) Plaintiff attended the third session and took another drug test, which he passed. (*Id.*) On March 29, 2017, Plaintiff received an email from Defendant Rivera-Vargas, a Transit Authority employee,

---

[4] The position "Train Operator" is capitalized in the Amended Complaint, and I capitalize it throughout this Opinion & Order.

extending a conditional offer of employment contingent on Plaintiff's successful completion of a medical evaluation. (*Id.* ¶ 26.) The email instructed Plaintiff to complete a computerized questionnaire in advance of his medical analysis. (*Id.* ¶ 28.) Plaintiff completed the questionnaire, truthfully indicating that he had "tried a drug" at an undisclosed time in the past. (*Id.*)

On May 31, 2017, Plaintiff attended an interview with Defendant Dr. Cecil Akiwumi of the Transit Authority's Medical Review Office. (*Id.* ¶ 29.) While Plaintiff passed the exam, Dr. Akiwumi placed a medical hold on Plaintiff's application due to Plaintiff's history of kidney disease. (*Id.* ¶ 29.) Dr. Akiwumi also directed Plaintiff to visit the "Work Life Services" department of the Transit Authority to "determine how his past drug use would affect his employment." (*Id.* ¶ 30.) Plaintiff was informed that, "in order to resolve his Medical Hold, he must provide medical documentation from his nephrologist that his kidney disease would not impair his ability to work as a Train Operator. The [Transit Authority] told him to come back on Tuesday, April 4, to pick up a form for the doctor to complete." (*Id.* ¶ 32.) On April 4, Plaintiff picked up the form, met with his physician, who provided Plaintiff with the physician's report that Plaintiff then gave to the Transit Authority. (*Id.* ¶¶ 33–34.)

On April 5, 2017, Plaintiff met with Defendant Robert Hartley, an employee of Work Life Services. (*Id.* ¶ 35.) Hartley instructed Plaintiff to provide the Transit Authority with a "Treatment Summary Letter detailing his compliance with drug treatment, a diagnosis, a prognosis, toxicology reports, and a breathalyzer exam." (*Id.*) Plaintiff was told that the medical hold would not be removed "unless Plaintiff completed another rehab program and obtained a Rehabilitation Letter." (*Id.* ¶ 36.) Plaintiff subsequently attended an outpatient drug rehabilitation program that lasted approximately two and a half months. (*Id.* ¶ 38.)

On June 21, 2017, prior to Plaintiff clearing the medical hold, a "promotional list" was established for the Train Operator position. (*Id.* ¶ 40; *see also* Defs.' Mem. 8.) On or about June 21, 2017, the eligibility requirements for the Train Operator position were modified from taking eligible candidates from a competitive list to an internal promotion list. (*Id.* ¶ 40.) As a result, the Transit Authority began to hire Train Operators from within the organization. On or about June 23, 2017, Plaintiff completed the rehabilitation program and "obtained a Rehabilitation Letter upon completion." (*Id.* ¶ 41.) However, by the time Plaintiff provided the letter to Hartley and cleared the pre-employment medical hold on June 27, 2017, he was no longer eligible to be hired for the Train Operator position. (*Id.* ¶¶ 42–44.) Plaintiff claims that "had [he] not been required to attend an unnecessary drug rehabilitation program, he would have been cleared before the MTA changed the requirements [for the Train Operator position]." (*Id.* ¶ 47.)

## II.     **Procedural History**

Plaintiff commenced this action by filing a complaint on September 22, 2017. (Doc. 2.) On January 29, 2018, Defendants filed a motion to dismiss the complaint. (Doc. 10.) In response, I entered an Order setting a briefing schedule for Defendants' motion to dismiss or, in the alternative, directing Plaintiff to file an amended complaint on or before February 20, 2018. (Doc. 15.) On February 16, 2018, Plaintiff filed his Amended Complaint. (Doc. 17.)

On August 22, 2018, Defendants filed their motion to dismiss the Amended Complaint, along with a memorandum of law in support, a declaration with exhibits, and a notice to Plaintiff as a pro se litigant advising him of the motion. (Docs. 33–36.) On August 29, 2018, I entered a scheduling order for Defendants' motion. (Doc. 39.) On November 1, 2018, Plaintiff filed his opposition to the motion, (Doc. 47), and on December 18, 2018, Defendants filed their reply, (Doc. 54).

5

### III. Legal Standards

#### A. *Rule 12(b)(6)*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner*, 496 F.3d at 237. A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*

#### B. *Pro Se Litigant*

Even after *Twombly* and *Iqbal*, a "document filed *pro se* is to be liberally construed and . . . must be held to less stringent standards than formal pleadings drafted by lawyers." *Bennett v. City of New York*, 425 F. App'x 79, 80 (2d Cir 2011) (summary order) (quoting *Boykin v.*

*KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008)). Further, pleadings of a pro se party should be read "to raise the strongest arguments that they suggest." *Kevilly v. New York*, 410 F. App'x 371, 374 (2d Cir. 2010) (summary order) (internal quotation marks omitted). Nevertheless, dismissal of a pro se complaint is appropriate where a plaintiff fails to state a plausible claim supported by more than conclusory factual allegations. *See Walker v. Schult*, 717 F.3d 119, 124, 130 (2d Cir. 2013). In other words, the "duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal quotation marks omitted).

## IV. Discussion

Plaintiff brings claims for disability discrimination under the Rehabilitation Act, the NYSHRL, the NYCHRL, and § 1983 against the Transit Authority and the Individual Defendants in their official and individual capacities. Defendants move to dismiss all of Plaintiff's claims for failure to state a claim. I address these arguments in turn below.

### A. *Rehabilitation Act, NYSHRL, and NYCHRL Claims against the Transit Authority*

#### 1. Applicable Law

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Claims of disability discrimination pursuant to the Rehabilitation Act are analyzed under the same standards as claims brought under the Americans with Disabilities Act ("ADA"). *See, e.g.*, *id.*; *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016). To state a prima facie claim of disability discrimination under the Rehabilitation Act, a plaintiff must plausibly allege: (1) that he is an

individual with a disability within the meaning of the statute, (2) that he was otherwise qualified for the position or benefit denied, (3) that he suffered an adverse employment action because of his disability, and (4) the program sponsoring his position receives federal funding. *Nadel v. Shinseki*, 57 F. Supp. 3d 288, 295 (S.D.N.Y. 2014). "To survive a Rule 12(b)(6) motion to dismiss, a [Rehabilitation Act] claim need only allege facts providing plausible support for the reduced requirements of the prima facie case." *Forman v. City of New York*, No. 14-CV-6282-LTS, 2017 WL 1167334, at *4 (S.D.N.Y. Mar. 27, 2017) (internal quotation marks omitted).

The NYSHRL provides that "[i]t shall be an unlawful discriminatory practice . . . [f]or an employer . . . because of an individual's . . . disability . . . to discriminate against such individual . . . in [the] terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1)(a). The NYCHRL states that "[i]t shall be an unlawful discriminatory practice . . . [f]or an employer[,] . . . because of the actual or perceived . . . disability . . . of any person[,] . . . [t]o discriminate against such person . . . in [the] terms, conditions or privileges of employment." N.Y.C. Admin. Code § 8-107(1)(a). A claim of disability discrimination under the NYSHRL and NYCHRL is governed by the same legal standards as those governing federal ADA and Rehabilitation Act claims. *See Makinen v. City of New York*, 53 F. Supp. 3d 676, 689–90 (S.D.N.Y. 2014). While the NYSHRL and NYCHRL define "disability" more broadly than the ADA, *Pagan v. Morrisania Neighborhood Family Health Ctr.*, No. 12 Civ. 9047(WHP), 2014 WL 464787, at *6 (S.D.N.Y. Jan. 22, 2014), if a plaintiff sufficiently pleads a disability discrimination claim under the more rigorous Rehabilitation Act standard, courts typically find that she has also sufficiently stated claims under the NYSHRL and the NYCHRL. *See Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) (explaining that the ADA and NYSHRL constitute a "floor below which the City's Human Rights law cannot fall"); *Pagan*, 2014 WL 464787, at *6 (finding

that "having pleaded a claim under the more demanding ADA standard, [plaintiff] has also pleaded claims under the NYSHRL and the NYCHRL").

### 2. Application

I find, construing Plaintiff's Amended Complaint liberally as I must, that Plaintiff has plausibly alleged, at this stage of the case, a prima facie case of disability discrimination.

Plaintiff plausibly alleges that he is an individual with a disability within the meaning of the Rehabilitation Act. The Rehabilitation Act provides that an "individual with a disability" includes any person who is perceived or regarded as having a disability. *See* 29 U.S.C. § 705(20)(B); *see also Ragusa v. Malverne Union Free Sch. Dist.*, 582 F. Supp. 2d 326, 344 (E.D.N.Y. 2008) (noting that whether an individual is regarded as having a disability "depends not on the existence of an actual disability but on the employer's perception of the employee" (internal quotation marks omitted)), *aff'd in part and vacated in part on other grounds*, 381 F. App'x 85 (2d Cir. 2010). Under the Rehabilitation Act, drug addiction, like alcoholism, is recognized as a disease that can be disabling, whereas current drug use disqualifies a person from protection under the act. *Robertson v. Amtrak/Nat'l R.R. Passenger Corp.*, 400 F. Supp. 2d 612, 623 (S.D.N.Y. 2005). Moreover, the act includes in its definition of disabled any individual who "has successfully completed, or is in the process of completing, 'a supervised drug rehabilitation program and who is no longer engaging in the illegal use of drugs, or has otherwise been rehabilitated successfully and is no longer engaging in such use.'" *Id.* at 622–23 (quoting 29 U.S.C. §§ 705(20)(C)(ii)(I), 705(20)(C)(ii)(II)).

Plaintiff asserts that he was discriminated against based on his "perceived former substance abuse," (Am. Compl. 4), and/or because he was perceived as a "rehabilitated drug

addict," (Pl.'s Opp. 6).⁵ Plaintiff has pleaded sufficient facts to support these assertions. Plaintiff's contention that the Transit Authority directed him to complete a two-and-a-half month-long drug treatment program after he disclosed his prior drug conviction and drug treatment, (*see* Am. Compl. ¶¶ 13, 35, 36, 38), alone raises a plausible inference that the Transit Authority perceived Plaintiff to be a drug addict. The inference is further bolstered by the claim that, following Plaintiff's disclosure that he had used a controlled substance in the past, and that he had completed inpatient and outpatient drug treatment as a result, the Transit Authority subjected Plaintiff to four different drug tests, even though none of them tested positive for illegal substances. Furthermore, following Plaintiff's medical exam, the Transit Authority requested that Plaintiff provide a letter detailing his compliance with drug treatment, a diagnosis, and a prognosis. All of these allegations create a reasonable inference that the Transit Authority regarded Plaintiff as a current or rehabilitated drug addict.

Plaintiff also adequately pleads that he was otherwise qualified for the position. In addition to passing the initial qualifying civil service examination, Plaintiff notes that numerous Transit Authority employees implied that Plaintiff would be hired by, among other things, telling Plaintiff they were attempting to schedule Plaintiff for training sessions and informing Plaintiff that they "looked forward to riding on Plaintiff's train." (Am. Compl. ¶¶ 21, 23, 42.) More significantly, Plaintiff states that he was given a conditional offer of employment subject only to the successful completion of his medical evaluation. (*Id.* ¶ 26.) While Plaintiff's medical hold was initially premised on both his history of kidney disease and his prior drug use, Plaintiff

---

⁵ Because "pro se litigants generally are entitled to a liberal construction of their pleadings, which should be read to raise the strongest arguments that they suggest," *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (internal quotation marks omitted), I liberally construe Plaintiff's submissions as asserting that he was perceived by the Defendants to be either a current or rehabilitated drug addict. "Pl.'s Opp." refers to Plaintiff's Opposition to Defendants' Motion to Dismiss, filed on October 29, 2018. (Doc. 45.)

promptly submitted a letter from his nephrologist indicating he was in good health; therefore, the lifting of the medical hold was then contingent only on Plaintiff's completion of the drug treatment program. Taken together, I find that Plaintiff has sufficiently alleged that, absent Plaintiff's perceived disability, he was qualified for the position of Train Operator.

Next, Plaintiff has adequately alleged that he sustained an adverse action. "A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of [his or her] employment." *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation marks omitted). "A materially adverse change is one that has an attendant negative result, a deprivation of a position or an opportunity." *Gutierrez v. City of New York*, 756 F. Supp. 2d 491, 506 (S.D.N.Y. 2010) (internal quotation marks omitted). It includes actions such as "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [and] significantly diminished material responsibilities." *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004); *cf. McManamon v. Shinseki*, No. 11 Civ. 7610(PAE), 2013 WL 3466863, at *8 (S.D.N.Y. July 10, 2013) (analyzing plaintiff's claims for disability discrimination under the Rehabilitation Act based on defendant's failure to hire plaintiff). Here, Plaintiff alleges that the Transit Authority directed Plaintiff to submit to drug rehabilitation as a precondition to employment, thereby preventing Plaintiff from beginning work immediately and depriving him of wages and employment. Thus, Plaintiff has adequately pleaded that he suffered an adverse action because of his perceived disability.

Finally, Defendants do not dispute that the Transit Authority is an employer subject to the Rehabilitation Act. (*See generally* Defs.' Mem. 11–16.)

Accordingly, I find that Plaintiff has stated a plausible claim for disability discrimination

against the Transit Authority under the Rehabilitation Act and, thus, under the NYSHRL and NYCHRL, *see Pagan*, 2014 WL 464787, at *6.

### B.  *Rehabilitation Act, NYSHRL, and NYCHRL Claims against the Individual Defendants*

Defendants contend that Plaintiff's Rehabilitation Act, NYSHRL, and NYCHRL claims against the Individual Defendants should be dismissed because individuals are not proper defendants in claims brought under those acts. I address these arguments below.

#### 1. Rehabilitation Act

It is well established that individuals cannot be named as defendants in their personal capacities in Rehabilitation Act suits. *See, e.g.*, *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) ("[N]either Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials."). Whether individuals can be sued for damages under the Rehabilitation Act in their official capacities is not as clear. *See Monroe v. Gerbing*, No. 16-CV-2818 (KMK), 2017 WL 6614625, at *15 (S.D.N.Y. Dec. 27, 2017) (noting that the issue is "unsettled in the Second Circuit" (internal quotation marks omitted)). Numerous district court judges in this Circuit have held that official capacity suits for monetary damages are not cognizable under the ADA or Rehabilitation Act, *see, e.g., Sutherland v. N.Y. State Dep't of Law*, No. 96 CIV. 6935(JFK), 1999 WL 314186, at *7 (S.D.N.Y. May 19, 1999) ("Nor can individuals be named as defendants in ADA or Rehabilitation Act suits in their official or representative capacities."), *aff'd*, 216 F.3d 1073 (2d Cir. 2000), while others have reached the opposite conclusion, *Cole v. Goord*, No. 05 Civ. 2902(GEL), 2009 WL 2601369, at *4–5 (S.D.N.Y. Aug. 25, 2009) (finding that an individual may be sued in her official capacity for damages because she is effectively named as the public entity)*; see also Monroe*, 2017 WL 6614625, at *15 (collecting cases ruling on both sides of the issue). Nevertheless, courts appear

to be in relative agreement that "Rehabilitation Act suits for prospective injunctive relief may . . . proceed against individual [defendants] in their official capacity." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Walker v. City of New York*, No. 17 Civ. 9414 (KPF), 2019 WL 568392, at *6 (S.D.N.Y. Feb. 12, 2019) (same).

Liberally construing Plaintiff's Amended Complaint, and the arguments contained in his opposition brief, Plaintiff is not seeking monetary damages from the Individual Defendants under the Rehabilitation Act. (*See* Am. Compl. 6 (seeking an order directing the Transit Authority "to hire me" and for "back pay"); Pl.'s Opp. 3 (indicating that Plaintiff's claims for relief include "disparate treatment under the Rehabilitation Act against the [Transit Authority] for monetary and injunctive relief and the individual defendants for injunctive relief"); *id.* at 22 (arguing that his claims against the Individual Defendants in their official capacities for "injunctive relief" should proceed).)[6] Accordingly, Plaintiff's claims against the Individual Defendants in their individual capacities are dismissed and, to the extent Plaintiff's Amended Complaint can be construed as asserting claims for injunctive relief under the Rehabilitation Act against the Individual Defendants in their official capacities, those claims survive.

### 2. NYSHRL and NYCHRL

Defendants assert a vague and conclusory argument that "Plaintiff's assertion is insufficient to state a claim of discrimination against the individually named defendants" under the NYSHRL and NYCHRL. (*See* Defs.' Mem. 18.) However, it is well established that "[u]nder the NYSHRL and NYCHRL an individual may be held liable as an aider and abettor of discriminatory practices once liability is established against the employer." *Turowski v. Triarc*

---

[6] Plaintiff's Amended Complaint also indicates that he seeks "money damages as appropriate under § 1983." However, as discussed below, *see infra*, Plaintiff has not asserted a cognizable claim under § 1983.

13

*Cos.*, 761 F. Supp. 2d 107, 110–11 (S.D.N.Y. 2011). Actual participation in conduct giving rise to a discrimination claim may support liability under both statutes. *See Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 367 (S.D.N.Y. 2012).

Plaintiff has described instances in which each of the Individual Defendants purportedly participated in the alleged discrimination. (*See, e.g.*, Am. Compl. ¶ 21 (allegations pertaining to Defendant Siegman); *id.* ¶ 26 (same as to Rivera-Vargas); *id.* ¶ 30 (same as to Akiwumi); *id.* ¶¶ 35–37, 42 (same as to Hartley); *id.* ¶ 44 (same as to Robinson).) Moreover, Defendants have done nothing to substantiate their single sentence assertion in support of dismissal of these claims.

Accordingly, Defendants' motion to dismiss Plaintiff's NYSHRL and NYCHRL claims against the Individual Defendants is denied.

### C. *Section 1983 Claims*

Defendants move to dismiss Plaintiff's § 1983 claims, arguing that Plaintiff failed to identify in his Amended Complaint any constitutional right on which to base his claims. Although Plaintiff asserts in his opposition brief that his claims are premised on a violation of the Equal Protection Clause of the Fourteenth Amendment, Defendants contend that Plaintiff cannot amend his pleading through his opposition brief and that this new argument may not be properly considered. Even if, in light of Plaintiff's pro se status, I were to construe Plaintiff's pleading as asserting a § 1983 claim based on an Equal Protection Clause violation, Plaintiff's claims would fail for the reasons outlined below.[7]

---

[7] To the extent Plaintiff's § 1983 claims are based on a deprivation of rights under the Rehabilitation Act, those claims would also fail. *See Sinisgallo v. Town of lslip Hous. Auth.*, 865 F. Supp. 2d 307, 333–34 (E.D.N.Y. 2012) ("A plaintiff cannot assert claims under Section 1983 for the deprivation of rights guaranteed by . . . the Rehabilitation Act.").

14

### 1. Applicable Law

Section 1983 provides a civil claim for damages against "[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." 42 U.S.C. § 1983. In other words, "[t]o state a claim under § 1983, a plaintiff must allege that defendants violated plaintiff's federal rights while acting under color of state law." *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 1703 (2015). Section 1983 does not establish substantive rights, but provides a means of redress for the deprivation of rights established elsewhere. *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006).

### 2. Application

The Equal Protection Clause of the Fourteenth Amendment declares that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. The Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). "It prohibits intentional discrimination on the basis of protected classifications such as race and sexual orientation, but not government action that merely has a disproportionate impact on those classes." *Pinter v. City of New York*, 976 F. Supp. 2d 539, 565 (S.D.N.Y. 2013) (citing *Windsor v. United States*, 699 F.3d 169, 181 (2d Cir. 2012), *aff'd*, 570 U.S. 744 (2013)).

Equal protection analysis begins with determining the appropriate level of scrutiny. *Ramos v. Town of Vernon*, 353 F.3d 171, 174 (2d Cir. 2003). A heightened level of scrutiny

applies when discrimination is based on membership in a suspect class, such as a racial group, and the government must show that its action is "narrowly tailored" to "further compelling governmental interests." *Jana-Rock Constr., Inc. v. N.Y. State Dep't of Econ. Dev.*, 438 F.3d 195, 205 (2d Cir. 2006). For allegations of discrimination based on non-suspect classifications, "the equal protection guarantee of the Constitution is satisfied when the government differentiates between persons for a reason that bears a rational relationship to an appropriate governmental interest." *Able v. United States*, 155 F.3d 628, 631 (2d Cir. 1998). Disability is not a protected class and therefore claims of discrimination based on that class receive rational basis review. *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 366 (2001); *Garcia*, 280 F.3d at 109.

Rational basis review is highly deferential to the government, whose actions are considered presumptively rational and must be upheld if "there is any *reasonably conceivable* state of facts that could provide a rational basis for the classification." *Yuen Jin v. Mukasey*, 538 F.3d 143, 158 (2d Cir. 2008). The rational basis need not be articulated at the time the discriminatory classification or action occurs; the burden is ultimately on the plaintiff to negate "every conceivable basis which might support" the state's action, whether or not the basis has a foundation in the record. *Price v. N.Y. State Bd. of Elections*, 540 F.3d 101, 100 (2d Cir. 2008).

Following this approach, while making all factual inferences in Plaintiff's favor, a rational basis for Defendants' actions is readily apparent. Indeed, as Defendants contend, Plaintiff's referral to Work Life Services for evaluation was rationally related to the job functions and responsibilities associated with the Train Operator position. "Train Operators have direct responsibility for the safe, timely and proper operation of New York City Transit Authority multi-unit subway cars, subway service cars and trains" and the passengers that ride them.

16

(Defs.' Mem. 16.) Given Plaintiff's disclosure that he previously used drugs at some unspecified time, it is reasonably conceivable that Defendants had a rational basis for referring Plaintiff for evaluation and rehabilitation before providing him the opportunity to operate passenger trains. *See Smith v. Defendant A*, No. 08 Civ. [ ](DLC), 2009 WL 1514590, at *6 (S.D.N.Y. May 29, 2009) ("So long as the government's disparate actions are rationally related to a legitimate purpose, no equal protection violation is presented even if the actions are done quite hard headedly or hardheartedly." (internal quotation marks omitted)).[8]

Accordingly, Plaintiff's § 1983 claims are dismissed.

## V.     Conclusion

For the reasons stated herein, Defendants' motion to dismiss, (Doc. 33), is GRANTED IN PART and DENIED IN PART.  Specifically, Plaintiff's claims against the Individual Defendants under the Rehabilitation Act in their personal capacities and Plaintiff's § 1983 claims are dismissed.  Plaintiff's remaining claims survive.

The Clerk of Court is respectfully directed to terminate the open motion at Doc. No. 33 and mail a copy of this Opinion and Order to the pro se Plaintiff.

---

[8] In order to hold a municipality or one of its agencies liable under § 1983, a plaintiff must plead a municipal policy or custom that directly caused the constitutional violation.  *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *see also Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 735–36 (1989).  Plaintiff has failed to allege such policy or custom.  In any event, even if Plaintiff could demonstrate that the supposed constitutional violation was caused by a municipal policy or custom, Plaintiff's § 1983 claim would fail for the reason outlined above.

Defendants shall file an Answer to the Amended Complaint within twenty-one days of the date of this Opinion & Order.

SO ORDERED.

Dated: March 31, 2019
      New York, New York

                                        Vernon S. Broderick
                                        United States District Judge